

NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT FLEMING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-251-A |
| | § | |
| DAVID FRIAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION</u>
<u>and</u>
<u>ORDER</u>

Now before the court are the following motions filed in the above-captioned action: motion for judgment on the pleadings[1] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed by defendants, David Frias ("Frias"), Kyle Dishko ("Dishko"), and City of Arlington, Texas ("City"), and motion for summary judgment filed by Frias and Dishko. Plaintiff, Robert Fleming, filed responses to both motions, and defendants filed replies. Having considered the motions and the applicable responses and replies, as well as the pleadings and pertinent legal authorities, the court concludes that the motion for

---

[1] The motion pursuant to Rule 12(c) is styled as a "Motion to Dismiss Under Rule 12(c)." The first heading in the body of the motion is stated as "Grounds for Dismissal." A motion pursuant to Rule 12(c) is not one for dismissal, but rather for judgment on the pleadings, and that is how the court will construe defendants' motion.

judgment on the pleadings should be granted, and the motion for summary judgment denied as moot.

I.

## Plaintiff's Claims

Plaintiff on May 6, 2009, initiated this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on October 27, 2006, he was arrested and incarcerated in City's jail for the murder of Ashley Hegazy ("Hegazy"), and that he remained in custody for nineteen months, although defendants had evidence exonerating him. The murder occurred at 7:10 p.m. on October 27, 2006, and was investigated by Frias and Dishko, police officers with City. The investigation revealed that plaintiff had been in an altercation with Hegazy earlier on the day of the murder. When plaintiff learned that the police were investigating his prior altercation with Hegazy, he called the police on the night of the murder and paged Dishko, who had called plaintiff and told him the police needed to speak to him. Plaintiff later spoke with Dishko via telephone and told him he was not involved in the murder. Dishko told plaintiff that Frias would call him back.

At 10:30 p.m. on October 27, 2006, Frias telephoned plaintiff, who agreed to meet Frias at the Arlington police station to discuss the murder. Before plaintiff arrived, Frias

2

prepared a warrant for his arrest. When plaintiff arrived at the police station, he was read his Miranda rights, which he waived, and Frias interrogated him about the murder. Plaintiff contended that he had nothing to do with the murder, and explained that at the time of the murder he was at Starz Barbershop, that he arrived there at 6:45 p.m. and waited for two hours because of a long wait for a haircut. Plaintiff explained that he called police from the barbershop because he wanted to speak to one of the officers who had responded to the prior altercation with Hegazy. Plaintiff told Frias he first called the Pantego Police Department non-emergency number and was transferred to the 911 number of the Arlington Police Department, and spoke to someone there. He later called back to the 911 number, hung up after he was put on hold, and at some point called Dishko. Plaintiff allowed Frias to examine the cell phones from which he had made the above-referenced telephone calls. Frias arrested plaintiff for the murder and took him to the booking area.

A short time later, Dishko told Frias that police dispatch had located a recorded telephone call received on October 27, 2006, at 7:07 p.m., which lasted sixty-one seconds, and that the recorded voice sounded like plaintiff's. Although contacted by dispatch, Sprint PCS was unable at that time to give the cell

3

site tower location for the recorded call. Sprint further advised, however, that the cell phone that had made the above-referenced call had also called "911" at 7:09 p.m. on October 27, 2006, and that the cell site used was the location of the Starz Barbershop. Sprint also advised that at 7:10 p.m. the same cell phone called "911" but immediately hung up, but that the cell tower information was unavailable because the call was too short. Based on the foregoing information, Frias again questioned plaintiff on the night of October 27, 2006. Plaintiff cooperated, answered questions, agreed to a "GSR test," Pl.'s Compl. at 5, agreed to turn over the clothing he had worn earlier that day, and agreed to a search of his vehicle and apartment. Despite the foregoing and despite the information received from Sprint confirming plaintiff's alibi based on the telephone calls from Starz Barbershop, Frias and Dishko kept plaintiff in custody.

On October 31, 2006, a Tarrant County district court ordered Sprint Cellular Telephone Company to provide to Frias cell cite information for the cellular telephone calls plaintiff made at the time of the murder, as well as for all calls he made from 8:00 a.m. on October 27, 2006, to 12:00 p.m. on October 28, 2006, and to provide cell cite maps for the above calls showing the

geographical location of the telephone calls from plaintiff's cell phone number. Sprint complied with the order. Although the information confirmed his alibi, plaintiff was not released from custody. Plaintiff complains that based on the foregoing information requested on October 31, 2006, and thereafter obtained from Sprint, Frias and Dishko knew or reasonably should have known that plaintiff did not murder Hegazy and that no probable cause existed to arrest or detain plaintiff for the murder. On December 5, 2006, plaintiff was indicted for Hegazy's murder. On May 7, 2008, the murder charge against plaintiff was dismissed by the prosecution, and plaintiff was released from custody.

In the instant action, plaintiff asserts claims against Frias and Dishko for unlawful arrest and detention in violation of the Fourth and Fourteenth Amendments, and against City for failure to train, supervise, and discipline police officers.

II.

The Instant Motions

Defendants contend they are entitled to judgment on the pleadings because:

1. it is apparent from the face of the complaint that plaintiff's claims accrued more than two years prior to the date

5

plaintiff commenced this action and are thus barred by limitations;

2. plaintiff has failed to state claims against Dishko and Frias sufficient to overcome their defense of qualified immunity;

3. plaintiff has failed to state a claim against City because he failed to allege specific factual allegations in support of his claim that City's failure to train, supervise and discipline police officers resulted in unconstitutional conduct.

The grounds of Frias and Dishko's motion for summary judgment are that:

1. Frias and Dishko caused no violation of plaintiff's Fourth or Fourteenth Amendment rights;

2. even if a rights violation occurred, Frias and Dishko are entitled to qualified immunity because their actions were objectively reasonable and conducted in good faith in light of the totality of the circumstances.

III.

Analysis

A. Standard for Judgment on the Pleadings

Rule 12(c) provides, in pertinent part, that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." The motion is

6

designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.[2] See Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990). The standard for reviewing a motion pursuant to Rule 12(c) is the same as for a motion under Rule 12(b)(6). See Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008). In considering a motion for judgment on the pleadings, the

> central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. Although we must accept the factual allegations in the pleadings as true, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (remaining internal citations omitted).

In evaluating whether the complaint states a valid claim for relief, the court construes the allegations of the complaint favorably to the pleader. Warth v. Seldin, 422 U.S. 490, 501 (1975). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. Bell

---

[2] Defendants apparently fail to recognize this requirement of a motion for judgment on the pleadings, as on at least one occasion they state that the factual allegations are in dispute.

Atlantic, 550 U.S. at 555 (stating that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations, brackets, and quotation marks omitted)); Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992). On a motion to dismiss (or for judgment on the pleadings), courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. Careful consideration of the complaint in the instant action leads to the conclusion that plaintiff's claims are barred by limitations, but even if that were not the case, Dishko and Frias are entitled to immunity, and plaintiff has failed to allege sufficient facts to raise his claims against City above the speculative level.

B. <u>Plaintiff's Claims Are Time Barred</u>

Plaintiff alleges claims against Frias and Dishko pursuant to § 1983 for unlawful arrest and unlawful detention. Frias and

8

Dishko contend that these claims are barred by limitations. The court agrees.[3]

"The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001) (citations omitted). Using this standard, the parties agree that the applicable limitations period is two years, but disagree as to the date upon which the limitations period commences. Federal law determines when a claim pursuant to § 1983 accrues. Wallace v. Kato, 549 U.S. 384, 388 (2007); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998). Defendants contend that the limitations period began to run at the latest when plaintiff was indicted on December 5, 2006.

In his response plaintiff contends that his claim of false arrest is partially based on Frias and Dishko's "failure to disclose exculpatory evidence to the judge or magistrate who issued the warrant for Plaintiff's arrest, thus tainting the judge's or magistrate's determination of probable cause and

---

[3] A claim may be dismissed on the basis of an affirmative defense that appears on the face of the pleadings. Kansa Reinsurance Co., Ltd. v. Congressional Mortg., 20 F.3d 1362, 1366 (5th Cir. 1994) (affirming dismissal of claims pursuant to Rule 12(b)(6) based upon affirmative defense of limitations).

causing Plaintiff's arrest and continued detention without probable cause." Pl.'s Resp. to Defs.' Mot. to Dismiss at 3. Plaintiff maintains that under such circumstances, the limitations period for a claim of "false arrest or prosecution" does not accrue "until the plaintiff is released or until the proceedings have terminated in the plaintiff's favor." Id. (citing Price v. City of San Antonio, Tex., 431 F.3d 890 (5th Cir. 2005)). While plaintiff accurately cites Price's conclusion as to unlawful prosecution claims, that holding does nothing for plaintiff, as his complaint fails to assert a claim for unlawful prosecution. Nor do the above allegations concerning Frias and Dishko's alleged failure to disclose exculpatory evidence to the judge or magistrate appear anywhere in the complaint. Plaintiff cites the Supreme Court's holding in Wallace to support his contention as to when limitations begins to accrue. However, Wallace rejected the same argument now urged by plaintiff:

> [P]etitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of petitioner's minority.

Wallace, 549 U.S. at 390.

In Wallace, the Court considered when limitations accrue

under § 1983 for claims of false arrest and false imprisonment, determining that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." Id. at 388. The Court, referring to the two claims together as "false imprisonment," concluded that

> [r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process--when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.

Id. at 389 (internal citations omitted). Here, the complaint alleges that plaintiff was arrested on October 27, 2006, and indicted on December 5, 2006. The limitations period for plaintiff's claim of false imprisonment[4] thus began to run with the commencement of legal process on December 5, 2006.[5] As plaintiff filed the instant action on May 6, 2009, more than two years after the accrual of his claim for false imprisonment, his claims are time-barred.

---

[4] The court refers to plaintiff's claims for false arrest and false detention as "false imprisonment," consistent with Wallace v. Kato, 549 U.S. 384, 389 (2007).

[5] The court recognizes that additional legal process likely occurred between the date of plaintiff's arrest and the date of his indictment. Those steps and the dates of their occurrence are not found in the pleadings and thus are not before the court in considering the instant motion.

Even if not time-barred, the court considers that Frias and Dishko's argument concerning their entitlement to a defense of qualified immunity has merit, and would afford an additional basis for the court to grant either the motion for judgment on the pleadings or the motion for summary judgment.

C.   <u>Plaintiff Failed to State a Claim for Relief Against City</u>

Even if plaintiff's claims were not barred by limitations, he has failed to adequately allege a claim for municipal liability against City.

A municipality may be liable under § 1983 only for its own unconstitutional or illegal policies, and not for the tortious acts of its employees under a <u>respondeat superior</u> theory. <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978). Thus, to hold a municipality liable under § 1983 for the acts of its employees, a plaintiff must initially allege that "an official policy or custom was a cause in fact of the deprivation of rights inflicted." <u>Spiller v. City of Texas City, Police Dept.</u>, 130 F.3d 162, 167 (5th Cir. 1997) (citing <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 525 (5th Cir.1994)). To satisfy the "cause in fact" requirement, a plaintiff must allege that "the custom or policy served as the moving force behind the [constitutional] violation" at issue, or that the alleged harm

12

resulted from the execution of the official policy or custom. Id. (internal citations omitted). The allegation of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. Id.

The factual allegations against City do not satisfy this standard. Here, plaintiff's allegations of municipal liability are nothing more than legal conclusions masquerading as factual allegations. None of the factual allegations in the complaint allege or support the existence of a policy or custom, or the identity of policymakers, or that the alleged custom or policy was the moving force behind any alleged constitutional violation. Instead, the complaint sets forth a "formulaic recitation of the elements" required to establish municipal liability. However, when bringing claims pursuant to § 1983 courts "consistently require the claimant to state specific facts, not merely conclusory allegations." Morrison v. City of Baton Rouge, 761 F.2d 242, 244 (5th Cir. 1985). The court concludes that plaintiff's assertions amount to nothing more than improper conclusory allegations insufficient to establish City's liability. See Spiller, 130 F.3d at 167.

IV.

Order

Therefore,

For the reasons stated above,

The court ORDERS that:

(1) The motion for judgment on the pleadings filed in the above-captioned action by Frias, Dishko, and City be, and is hereby, granted.

(2) The motion for summary judgment of Frias and Dishko be, and is hereby, denied as moot.

(3) All claims and causes of action brought by plaintiff, Robert Fleming, against Dishko, Frias, and City, be, and are hereby, dismissed.

SIGNED December 23, 2009.

JOHN McBRYDE
United States District Judge